**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALERXI RONDON REYES,** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **J.L. JAMISON, in his official capacity as** | : | |
| **the Warden of the Federal Detention** | : | |
| **Center, et al.,** | : | |
| *Respondent*s. | : | **NO. 26-1324** |

**MEMORANDUM**

**KENNEY, J.**                                                                                      **April 9, 2026**

On March 2, 2026, Petitioner Alerxi Rondon Reyes filed a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1, the "Petition"), seeking immediate release and

claiming that his re-detention by Immigration and Customs Enforcement ("ICE") violates the Due

Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA") and

implementing regulations, the Administrative Procedure Act ("APA"), and the *Accardi* doctrine.

*See* ECF No. 1. Petitioner had previously been deported from the United States twice already, in

1995 and in 2008. ECF No. 8-1 at 2; ECF No. 8-4 at 2. Following Petitioner's third unlawful entry

into the U.S. in 2023, Petitioner was granted deferral of removal to the Dominican Republic, his

home country, under the Convention Against Torture and Other Cruel, Inhuman or Degrading

Treatment of Punishment ("CAT") and released from custody under an Order of Supervision

("OSUP"). ECF Nos. 8-9, 8-10. Respondents claim that Petitioner violated the conditions of his

OSUP after he was arrested for Driving Under the Influence and other charges, and as such, oppose

his release. *See* ECF No. 8. For the reasons set forth below, the Court will deny the Petition (ECF

No. 1).

1

## I.    BACKGROUND

Petitioner Alerxi Rondon Reyes is a 61-year-old noncitizen from the Dominican Republic who has entered the U.S. illegally three times. ECF No. 1 ¶ 14; *see* ECF Nos. 8-1, 8-4. Petitioner first entered the U.S. without inspection on or about August 1, 1990 and was placed into deportation proceedings pursuant to former § 241(a)(1)(B) of the INA. ECF No. 8 at 5; ECF No. 8-1 at 1. On April 13, 1994, an immigration judge granted Petitioner's request for voluntary departure, but Petitioner violated the order by failing to leave the country by the date specified in the order, thereby converting the voluntary departure order into a deportation order. ECF No. 8-2; ECF No. 8-3 at 2. Petitioner was then deported from the U.S. to the Dominican Republic on March 16, 1995. ECF No. 8-1 at 2.

Following his first removal, Petitioner unlawfully reentered the U.S. on an unknown date and time. ECF No. 8-3. On April 13, 2004, Petitioner was arrested and charged with various controlled substance offenses, including Possession with Intent to Deliver a Controlled Substance (117.4 grams of heroin and a quarter pound of crack cocaine) in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(30). *Id.* at 2. Petitioner was convicted of this offense on September 25, 2007 and subsequently served a term of imprisonment. ECF No. 8-4 at 2–3; ECF No. 8 at 6. Following completion of his sentence, Petitioner was removed a second time from the U.S. to the Dominican Republic on July 30, 2008. ECF No. 8-5.

On May 14, 2023, Petitioner unlawfully entered the U.S. a third time. ECF No. 8-6. This time, Petitioner expressed a fear of returning to the Dominican Republic and was given a reasonable fear interview, which determined that Petitioner demonstrated a credible fear of torture upon removal to the Dominican Republic. ECF No. 8-7. After being referred to an immigration judge for placement into withholding-only removal proceedings under INA § 241, the immigration

judge found that due to Petitioner's prior felony drug trafficking conviction, Petitioner was statutorily ineligible for withholding of removal under INA § 241(b)(3) and withholding of removal under the CAT. ECF Nos. 8-8, 8-9. Instead, the immigration judge granted Petitioner deferral of removal under the CAT on September 20, 2023. ECF No. 8-9 at 1. That same day, ICE released Petitioner from custody under an OSUP that contained several conditions. ECF No. 8-10. One of the conditions stated that Petitioner shall "not commit any crimes or be associated with any criminal activity." *Id.* at 3. The OSUP informed Petitioner that "[a]ny violation of any of the . . . conditions may result in a . . . return to detention." *Id.* at 4.

On December 6, 2025, Petitioner was arrested for Driving Under the Influence, Simple Assault, Recklessly Endangering Another Person, False Identification to Law Enforcement, and Criminal Mischief, after allegedly crashing into a parked car while intoxicated and behaving aggressively towards the occupant of that car. ECF No. 8-11. As a result of Petitioner's arrest, ICE revoked his OSUP and detained him as of February 27, 2026 in order to facilitate his removal to a third country. ECF No. 8-12. All criminal charges against Petitioner in connection with his December 6, 2025 arrest were withdrawn on March 5, 2026. *See* ECF No. 6.

On March 2, 2026, through counsel, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, arguing that his re-detention is unlawful and that he was detained "without notice or opportunity to be heard." ECF No. 1 ¶ 2. On March 16, 2026, Respondents filed their opposition to the Petition. ECF No. 8. On March 23, 2026, Petitioner filed a reply in support of his Petition. ECF No. 12. The Petition is now fully briefed and before this Court.

## II.    LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at

its core a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III.   DISCUSSION

In the instant action, the Parties agree that Petitioner is being detained pursuant to 8 U.S.C. § 1231. *See* ECF No. 1 ¶ 34; ECF No. 8 at 2. For the reasons stated below, the Court finds that Petitioner's detention comports with due process and is in compliance with the INA, its implementing regulations, the APA, and the *Accardi* doctrine. As such, the Court will deny the Petition.

Section 1231 of the INA governs the procedures for detaining an alien who is subject to a final order of removal, providing that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," which is "referred to as the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A). Once the 90-day removal period has expired, Section 1231(a)(6) allows the Government to detain certain aliens beyond that period under three specific circumstances not relevant here. *See Lim v. Arteta*, No. 26-cv-461, 2026 WL 192490, at *1 (S.D.N.Y. Jan. 26, 2026) (citing 8 U.S.C. § 1231(a)(6)). If the Government does not remove an

4

alien within the 90-day removal period or detain the alien pursuant to Section 1231(a)(6), "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3)(A). Those implementing regulations are codified at 8 C.F.R. § 241.5(a). *See Dudamel v. Jamison*, No. 26-cv-361, 2026 WL 498612, at *4 (E.D. Pa. Feb. 23, 2026).

When noncitizens who have been ordered removed are released from detention at ICE's discretion, they generally become subject to an OSUP, which provides for their terms and conditions of supervision. *See id.; see also Funes v. Francis*, 810 F. Supp. 3d 472, 489 (S.D.N.Y. 2025); *Lim*, 2026 WL 192490, at *1. The relevant regulations provide that an OSUP can be revoked under two circumstances: (1) if the alien "violates the conditions of release," the alien "may be returned to custody," 8 C.F.R. § 241.4(*l*)(1); and (2) upon a determination by certain enumerated individuals within ICE, an alien's release can be revoked, *see id.* § 241.4(*l*)(2). When ICE revokes an alien's OSUP pursuant to 8 C.F.R. § 241.4(*l*)(1), "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." *Id.* § 241.4(*l*)(1). In addition, "[t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Multiple courts have held that when an order of supervision is revoked pursuant to a discretionary determination by ICE—i.e., pursuant to 8 C.F.R. § 241.4(*l*)(2)—the procedural protections afforded by 8 C.F.R. § 241.4(*l*)(1) also apply. *See, e.g., Dudamel*, 2026 WL 498612, at *4 n.6; *Funes*, 810 F. Supp. 3d at 490–93; *Lim*, 2026 WL 192490, at *2; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163–64 (W.D.N.Y. 2025).

The discretionary decision by ICE to revoke a noncitizen's OSUP cannot be reviewed by a district court. 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause

or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[1] 8 U.S.C. § 1252(g); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that § 1252(g) strips courts of jurisdiction over claims arising from "three discrete actions": to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders" (citation omitted)). To execute a removal order, "the Attorney General must exercise his discretionary power to detain an alien," *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020), and so, the decision to revoke a noncitizen's OSUP in order to re-detain him for the purpose of executing his removal order "clearly falls under the purview of § 1252(g)." *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025). Therefore, this Court will not review whether Respondents' discretionary decision to revoke Petitioner's OSUP was proper but rather whether Respondents complied with their own revocation procedures when doing so. *Id.* ("The Court finds that § 1252(g) deprives it of subject-matter jurisdiction over Respondents' decision to revoke the OSUP, but not their purported failure to comply with their own procedures in doing so.").

Here, ICE complied with the requirements of 8 C.F.R. § 241.4(*l*) by providing Petitioner with prompt notice and an informal interview upon revocation of his OSUP. As a result of Petitioner's arrest on December 7, 2025 for Driving Under the Influence and related charges, ICE determined that Petitioner had violated the condition of his OSUP to not "commit any crimes or be associated with any criminal activity," ECF No. 8-10 at 3, and revoked the OSUP, ECF No. 8-12. Petitioner was provided with the Notice of Revocation of Release (the "Notice") on February

---

[1] After enacting § 1252(g), Congress transferred immigration enforcement authority from the Attorney General to the Secretary of Homeland Security. 8 U.S.C. § 1103(a); 6 U.S.C. § 202.

27, 2026, the same day that he was arrested and re-detained by ICE.[2] ECF No. 8-12 at 4; ECF No. 1 ¶ 23; *see* ECF No. 8-13. The Notice informed Petitioner that his release had been revoked pursuant to 8 C.F.R. § 241.4(*l*) because he "violated a condition of [his] release" after being "arrested for Driving Under the Influence of Alcohol, Simple Assault, Reckless Endangerment of Another Person, False [Identification] to Law Enforcement and 3 counts." ECF No. 8-12 at 3. The Notice further stated that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." *Id.* The Notice acknowledged that Petitioner was granted deferral of removal by an immigration judge, stating, "On October 14, 1994, you were ordered removed to the Dominican Republic, but you were granted withholding of removal to the Dominican Republic. Your case is under review for removal to an alternate country." *Id.* Thus, the Notice informs Petitioner that his release was being revoked for two reasons: (1) because he violated a condition of his OSUP and (2) because ICE intends to enforce Petitioner's removal order. Each of these reasons is sufficient by itself to revoke Petitioner's OSUP. 8 C.F.R. §§ 241.4(*l*)(1), (*l*)(2)(iii).

Within a week of Petitioner's re-detention, on March 5, 2026, Petitioner was afforded an informal interview, during which he was given the "opportunity to respond to the reasons for revocation stated in the" Notice. *See* 8 C.F.R. § 241.4(*l*)(1); ECF No. 10-1; ECF No. 8 at 19–20. The Notice had advised Petitioner of his right to an informal interview and informed him that he "may submit any evidence or information [he] wish[es] to be reviewed in support of [his] release." ECF No. 8-12 at 4. The record reflects that the interview took place on March 5, 2026 and that

---

[2] The Petition mistakenly states in some places that Petitioner was arrested by ICE on February 26, 2026, ECF No. 1 ¶¶ 1, 8, but states correctly in paragraph 23 that Petitioner was arrested by ICE on February 27, 2026. Petitioner's Reply confirms that Petitioner was arrested and re-detained on February 27, 2026, not February 26, 2026. ECF No. 12 at 4, 16. The warrant for Petitioner's arrest also confirms that the arrest occurred on February 27, 2026. ECF No. 8-13.

during the interview, Petitioner provided a written statement in support of his release. ECF No. 10-1. Thus, in accordance with the requirements of 8 C.F.R. § 241.4(*l*), Petitioner was provided with both notice and a meaningful opportunity to respond to the revocation via the informal interview. Furthermore, the Government has confirmed that within three months of the informal interview, "Petitioner will be afforded another, more fulsome opportunity to contest his release, which will include a records review, an interview, and a 'final evaluation' of facts relevant to revocation of release." ECF No. 8 at 19 (citing 8 C.F.R. § 241.4(*l*)(3)).

Petitioner takes issue with each step of the revocation process. *First*, Petitioner contends that Respondents had no basis to revoke Petitioner's OSUP because an arrest is not a conviction and all charges against him have been withdrawn. ECF No. 1 at 6, 18–19; ECF No. 12 at 2–10. However, the condition of his OSUP that Respondents allege he violated is that he not "commit any crimes *or* be associated with any criminal activity," ECF No. 8-10 at 3 (emphasis added), and it appears that Respondents have determined that Petitioner's December 2025 arrest for Driving Under the Influence, Simple Assault, Recklessly Endangering Another Person, False Identification to Law Enforcement, and Criminal Mischief constituted criminal activity, *see* ECF No. 8-12; ECF No. 8 at 14–15. As explained above, it is not within the Court's purview to weigh in on Respondents' discretionary decision to revoke Petitioner's OSUP for violation of a condition of release. That is, it is not the Court's role to decide whether Petitioner committed any crimes or is associated with criminal activity as a result of his December 2025 arrest—instead, the Court is evaluating whether Respondents' actions in revoking Petitioner's OSUP violated constitutional due process and the procedural safeguards guaranteed by the INA's implementing regulations and the APA. *See Barrios*, 2025 WL 2280485, at *4. Having reviewed the record, including the Notice and the informal interview form, the Court concludes that Respondents did not violate due process

8

or their own regulations. Further, even assuming, *arguendo*, that Petitioner did not violate the condition of his OSUP to not "commit any crimes or be associated with any criminal activity" by way of his December 2025 arrest, Respondents had a lawful, alternative basis to revoke his OSUP, which is that ICE intends to enforce his removal order by deportation to a third country. *See* ECF No. 8-12 at 3.

*Second*, Petitioner argues that his re-detention violates due process because his removal to a third country is not reasonably foreseeable. ECF No. 1 at 15, 17, 20; ECF No. 12 at 10–13. As of today, Petitioner has been detained for only a short amount of time, a little over a month, and Respondents have noted that ICE has initiated the third country removal process. ECF No. 8 at 16; ECF No. 8-12 at 2; *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (recognizing six months as a "presumptively reasonable period of detention" during the post-removal period). Respondents have also assured Petitioner and this Court that when a potential third country has been identified for Petitioner's removal, he will be provided with notice and given an opportunity to contest removal to that country. ECF No. 8 at 22. Thus, the Court finds that Petitioner's re-detention is not unlawful or unreasonable given that ICE is in the process of identifying an appropriate third country for Petitioner's removal, in accordance with his removal order and deferral from removal to the Dominican Republic.

*Third*, Petitioner argues that the Acting Field Office Director who signed the Notice lacks authority to revoke an OSUP under 8 C.F.R. § 241.4. ECF No. 1 at 7; ECF No. 12 at 13–14. Respondents contend that a Field Office Director has authority under 8 C.F.R. § 241.4(*l*)(2) to revoke an OSUP because the term "district director" is the equivalent of a Field Office Director today following the 2003 reorganization of the INS into the Department of Homeland Security ("DHS"). ECF No. 8 at 17 (citing 8 C.F.R. § 1.2). The relevant regulation, 8 C.F.R. § 1.2, provides

9

that "[o]n or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation," the term "district director" means, among other officials, "field office director." 8 C.F.R. § 1.2. To date, the Third Circuit has not issued any guidance on the issue of whether a Field Office Director is a "district director" or whether a Field Office Director has the authority to revoke an OSUP. Some district courts across the country have recognized that in line with the definition provided in 8 C.F.R. § 1.2, Field Office Directors have discretionary authority to revoke OSUPs. *See, e.g., Ceesay*, 781 F. Supp. 3d at 161 ("So under 241.4(*l*)(2), the officials with the power to revoke release after making certain findings include **field office directors**[.]" (emphasis added)); *Santamaria Orellana v. Baker*, No. 25-cv-1788, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025) ("[S]everal federal courts addressing similar circumstances have held that a failure to adhere to the requirement that an Executive Associate Director or a **Field Office Director** make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release." (emphasis added) (collecting cases)); *see also Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006) ("The old INS district directors are now titled 'Field Office Directors,' but their functions remain the same."). The Court finds the reasoning of these cases persuasive and in accord with the definitions section of 8 C.F.R. § 1.2. Therefore, the Court concludes that Field Office Directors have discretionary authority to revoke supervision under 8 C.F.R. § 241.4, and that here, the Acting Field Office Director who signed the Notice had the authority to revoke Petitioner's OSUP.

Petitioner also argues that the revocation of his OSUP violated 8 C.F.R. § 241.4 because the Acting Field Office Director did not make the required findings that revocation of his release is in the public interest and that circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner ("EAC"). ECF No. 1 at 7; ECF No. 12 at 14–17. Having

reviewed the record, and noting that the Notice is attached to and follows a document titled "OSUP Revocation Worksheet," the Court finds that the reasons supplied in the Notice detailing how Petitioner violated a condition of his OSUP, ECF No. 8-12 at 3, and the notes provided by the Supervisory Officer, Assistant Field Office Director, and Deputy Field Office Director in the OSUP Revocation Worksheet explaining that Petitioner is subject to a final removal order and has a prior felony conviction, *id.* at 2, are sufficient to show that the Acting Field Office Director, who signed the Notice, made the determination that revocation of Petitioner's release is in the public interest. The OSUP Revocation Worksheet also states that the Removal and International Operations division ("RIO") of ICE Headquarters was contacted in relation to adding Petitioner to the third country removal list. *Id.* Based on this contact with RIO, it was reasonable for the Acting Field Office Director to determine in his discretion that referral to the EAC was unnecessary in this case.

While Petitioner correctly points out that the Notice contains no explicit statements from the Acting Field Office Director affirming outright that revoking Petitioner's release was in the public interest and referral to the EAC was not reasonable, ECF No. 12 at 14–17, the implementing INA regulations do not require that a statement of these findings be made explicitly on the face of the required notice. The relevant regulation states that, "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*)(2). Nowhere in the regulation does it require the district director, or equivalent, to state these findings in the notice that is provided to the alien whose release is being revoked. *See Barrios*, 2025 WL 2280485, at *7 ("[T]he relevant regulation does not mandate that the revoking official explicitly state in the Notice of Revocation of Release that

11

the revocation was in the public interest and that the matter could not be referred to the Executive Associate Commissioner. Rather, the official must simply take that into consideration."). Rather, the Court holds that when the required factual findings (i.e., that revocation is in the public interest and circumstances do not reasonably permit referral to the EAC) are apparent from the record, it can be inferred that the revoking official took these findings into consideration in making his or her decision to revoke release and as such, the requirements of 8 C.F.R. § 241.4(*l*)(2) are met.[3] This is a case-by-case determination that must take into account the specific facts of each case. Here, the record clearly shows, and Petitioner does not dispute, that he has a prior criminal conviction for drug trafficking and that he has been deported from the U.S. twice already. ECF Nos. 8-1, 8-3, 8-4. The record also reflects that RIO was contacted for the purpose of adding Petitioner to the third country removal list. ECF No. 8-12 at 2. Based on these facts from the record, the Court concludes that the Acting Field Office Director took into consideration the public interest and reasonable referral to the EAC, as required by 8 C.F.R. § 241.4(*l*)(2).

*Fourth*, Petitioner argues that Respondents failed to provide him with prompt notice and an informal interview upon revocation, citing this Court's holding in *Martinez v. Jamison*, 2026 WL 700335. ECF No. 12 at 18–22. The facts in *Martinez* were distinctly different from the facts here: the petitioner in *Martinez* was a noncitizen who first arrived in the U.S. in 2005 and had resided in the U.S. incident-free for twenty-one years, had "an approved immigrant petition filed on his behalf by his mother," had complied with all required ICE check-ins for well over a decade,

---

[3] In *Martinez v. Jamison*, this Court left open the question of whether the lack of findings in Mr. Martinez's notice constituted an independent procedural violation. No. 26-cv-00718, 2026 WL 700335, at *5 n.6 (E.D. Pa. Mar. 12, 2026). This Court commented only that this additional aspect of the notice was troubling in that case, given that there was no other evidence in the record before it that Mr. Martinez had a criminal record or had violated the conditions of his OSUP, which might support an inference that the Acting Field Office Director had engaged in the requisite fact finding.

12

and most importantly, had no criminal record. 2026 WL 700335, at *1, 7 (internal quotations omitted). Here, Petitioner has only been living continuously in the U.S. since his third unlawful entry in 2023. ECF No. 1 at 3. Petitioner has previously entered the U.S. unlawfully on two separate occasions, in 1990 and on an unknown date following his first deportation from the country in 1995. ECF No. 8-1. After being granted voluntary departure by an immigration judge, Petitioner violated his voluntary departure order and did not leave the country by the date specified in the order. ECF No. 8-2; ECF No. 8-3 at 2. Sometime after his second unlawful entry into the country, Petitioner was convicted of a felony drug trafficking charge and served time in prison. ECF No. 8-4 at 2–3; ECF No. 8 at 6. Petitioner conveniently leaves out the details of his prior immigration and criminal records from his Petition and Reply brief. *See* ECF Nos. 1, 12. In any case, this Court granted the habeas petition in *Martinez* on the grounds that the petitioner in that case was not provided with the required informal interview, 2026 WL 700335, at *5–6, whereas Petitioner here received both notice and an informal interview, as discussed. Thus, *Martinez* is inapposite to the instant action.

With respect to Petitioner's claim that Respondents' decision to revoke his OSUP was arbitrary and capricious in violation of the APA, ECF No. 1 ¶¶ 74–82, while the APA "establishes a basic presumption of judicial review for one suffering [a] legal wrong because of agency action," "[t]hat presumption can be rebutted by a showing . . . that the agency action is committed to agency discretion by law." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16–17 (2020) (citations omitted and cleaned up). There is no on-point Third Circuit guidance on the specific issue of whether courts have jurisdiction to review an APA challenge to an OSUP revocation decision, but in the analogous context of bond hearings, the Third Circuit has held that courts lack jurisdiction to review an immigration judge's discretionary decision to grant or deny

13

bond. *Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 77 (3d Cir. 2019) ("[W]e may not review discretionary decisionmaking involved in denial of a bond[.]"). However, the Third Circuit has maintained that while courts may not review an immigration judge's discretionary bond decision, courts "retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis." *Id.* That is, courts may review "challenges that pertain to the adequacy of process" that a noncitizen received at his or her bond hearing. *Id.* at 78. As previously stated, the Court does not have jurisdiction to review ICE's discretionary decision to revoke Petitioner's OSUP. *See* 8 U.S.C. § 1252(g). Thus, in line with the Third Circuit's holding regarding bond decisions, this Court concludes that in the revocation context, while the Court may not review whether ICE's decision to revoke Petitioner's OSUP was arbitrary and capricious under the APA, the Court will review whether the process through which the OSUP was revoked was arbitrary and capricious under the APA. *See Roe v. Oddo*, No. 25-cv-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025) (finding that because "ICE complied with the applicable laws, . . . no APA violation exists"). Here, because the Court finds that Respondents complied with the procedural requirements established by the INA's implementing regulations in 8 C.F.R. § 241.4(*l*), as explained above, Petitioner's APA claim fails.

For similar reasons, Petitioner's claim under the *Accardi* doctrine also fails. *See* ECF No. 1 ¶¶ 69–73. Pursuant to the *Accardi* doctrine, federal agencies are required to follow their own regulations and formally established procedures to ensure a fair administrative process. *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Here, as previously detailed, Respondents plainly followed the procedures set out in the relevant regulations, 8 C.F.R. § 241.4(*l*), when revoking Petitioner's OSUP. And so, Petitioner's claim for a violation of the *Accardi* doctrine is

without merit.

## IV.   CONCLUSION

For the foregoing reasons, this Court finds that Respondents complied with the procedural requirements set forth in 8 C.F.R. § 241.4(*l*) when they revoked Petitioner's OSUP and re-detained him. Accordingly, Petitioner's re-detention satisfies due process and does not violate the INA and its implementing regulations, the APA, or the *Accardi* doctrine. Petitioner's claim for a *Khouzam* violation is premature this early into the third country deportation process, and in any event, the Government has confirmed that "if ICE identifies a third country to which it can remove Petitioner, Petitioner will also be afforded notice and an opportunity to contest removal to that country." ECF No. 8 at 22. Accordingly, the Court will deny the Petition (ECF No. 1). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**